UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

FILED
98 MAR -3 PM 12:38
U.S. DISTRICT COURT
N.D. OF ALABAMA
ENTERED
MAR 0 3 1998

CHARLES PRICE VAUGHN, BOBBY )
COX, STEVE OAKLEY, ROLAND )
IRONS, A. D. ROBINSON, JIMMY )
VADEN, JOHNNY RISNER, and )
DAVID RICE, )
  )
    Plaintiffs, )
  )
vs. ) Civil Action No. CV-97-S-2072-NW
  )
FMC CORPORATION, DON SMITH, )
  )
    Defendants. )

## MEMORANDUM OPINION

Plaintiffs are cotton farmers in Lauderdale County, Alabama. (Complaint ¶ 1.) During the summer of 1995, their crops faced devastation from infestations of boll worms and tobacco bud worms. (*Id.* ¶¶ 4-5.) Defendant FMC Corporation, a Delaware corporation, manufactures pyrethroids marketed under the brand names of "Ammo" and "Fury," for the purpose of "kill[ing] the tobacco bud worm and boll worm, as well as other insects which feed on the various parts of the cotton plant." (*Id.* ¶ 2.) FMC offered a written warranty regarding the effectiveness of "Ammo" against worm infestations until 1995.[1] (*Id.* ¶ 6.) No such written warranty was provided with FMC's product known as "Fury." Defendant Don Smith was employed by FMC to promote its products to dealers, distributors, and farmers in the northern counties of Alabama. (Smith Deposition at 8-9.) Don Smith allegedly expressly extended the "Ammo"

---

[1] The precise language of that warranty is not disclosed in the record before the court.

13

warranty to users of "Fury," including plaintiffs, stating that "if a cotton farmer purchased Fury or Ammo and sprayed his cotton crop twice within a five day period, and sprayed the product according to the label instructions, FMC would reimburse the farmer for the costs of Fury and Ammo if the worms were not killed or controlled as advertised." (Complaint ¶ 7-8.)

Plaintiffs purchased and applied "Ammo" and "Fury" in reliance on that warranty. (Complaint ¶¶ 9-14.) The products failed to control the infestation, and plaintiffs' crops were destroyed. (*Id.*) Plaintiffs sought reimbursement from FMC for the costs of the insecticides, but FMC denied their claims. (*Id.*)

Plaintiffs filed this action in the Circuit Court of Lauderdale County, Alabama, on July 2, 1997, alleging misrepresentation (Count One), breach of express warranty (Count Two), breach of implied warranty (Count Three), and fraudulent suppression (Count Four).[2] Defendants FMC and Don Smith jointly removed the action to this court on August 8, 1997, asserting federal question jurisdiction based upon 28 U.S.C. §§ 1331, 1441, and, diversity jurisdiction based upon 28 U.S.C. § 1332.

The matter now is before the court on plaintiffs' motion to remand. Upon consideration of the pleadings and briefs, this court concludes the motion is due to be granted.

---

[2] Count Five of plaintiffs' complaint asserts identical claims against "fictitious parties ABC, being those certain persons, firms or corporations whose misrepresentations, fraudulent suppression of necessary information, and breach of express and implied warranties, caused the plaintiffs' damage...." (Complaint ¶ 38.)

2

## I. DISCUSSION

Federal courts are courts of limited jurisdiction. *E.g.*, *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092 (11th Cir. 1994). As such, they have the power to hear only those cases authorized by Congress or by the Constitution. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377, 114 S.Ct. at 1675 (citation omitted); *see also Burns*, 31 F.3d at 1095 ("in deciding a motion to remand where the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court").

### A. Removal Jurisdiction

Title 28 U.S.C. § 1441(a) permits removal of any action over which "the district courts of the United States have original jurisdiction." Federal district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Defendants contend that this action arises under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136, which regulates the use, sale, and labeling of many chemical substances, including pesticides, herbicides, and insecticides. To support

3

their position, defendants cite numerous cases holding that FIFRA pre-empts various state law claims similar to those relied on by plaintiffs herein.[3] Yet, none of the FIFRA cases cited by defendants involved removal based on federal question jurisdiction; rather, each case was properly removed to, or originally filed in, federal court based on diversity jurisdiction. Defendants' reliance on those cases to demonstrate federal question jurisdiction is thus misplaced.

The Supreme Court instructs that "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987)(citing *Gully v. First National Bank*, 299 U.S. 109, 112-113,

---

[3] See Defendants' Opposition to Plaintiffs' Motion to Remand at 12-15, citing the following cases: Papas v. Upjohn Co., 985 F.2d 516 (11th Cir.), cert. denied, 510 U.S. 913, 114 S.Ct. 300 (1993)(diversity action filed in federal court); McDonald v. Monsanto Co., 27 F.3d 1021 (5th Cir. 1994)(removed based on diversity jurisdiction); Taylor AG Indus. v. PureGro, 54 F.3d 555 (9th Cir. 1995)(no discussion of grounds for federal court jurisdiction because case was apparently originally filed in federal court on basis of diversity of citizenship); Shaw v. Dow Brands, Inc., 994 F.2d 364 (7th Cir. 1993)(removed based on diversity jurisdiction); Worm v. American Cyanamid Co., 5 F.3d 744 (4th Cir. 1993)(removed based on diversity jurisdiction); Lowe v. Sporicidin Int'l, 47 F.3d 124 (4th Cir. 1995)(diversity action filed in federal court); Bice v. Leslie's Poolmart, Inc., 39 F.3d 887 (8th Cir. 1994)(no discussion of grounds for federal court jurisdiction because case was apparently originally filed in federal court on basis of diversity of citizenship); Welchert v. American Cyanamid, Inc., 59 F.3d 69 (8th Cir. 1995)(diversity action filed in federal court); King v. E.I. Du Pont de Nemours & Co., 996 F.2d 1346 (1st Cir.), cert dismissed, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993)(diversity action filed in federal court); Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 981 F.2d 1177 (10th Cir.), cert denied, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993)(no discussion of grounds for federal court jurisdiction because case was apparently originally filed in federal court on basis of diversity of citizenship).

57 S.Ct. 96, 97-98, 81 L.Ed. 70 (1936)). Consequently, the general rule is that removal based solely on assertion of a federal defense, such as pre-emption, is improper. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 ("it is now settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue"); *see also Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court").

There is, however, an exception to the well-pleaded complaint rule known as the "complete pre-emption" doctrine. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Complete pre-emption exists when "federal law is so dominant in a particular area, the pre-emptive force of a federal statute so 'extraordinary,' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleading complaint rule.'" *Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144 (8th Cir. 1992)(quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)); *see also*

5

*Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 ("On occasion, the Court has concluded that the pre-emptive force of a statute" renders an area of state law so completely pre-empted that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim"). The Supreme Court has recognized the existence of complete pre-emption in only three instances: under § 301 of the Labor Management Relations Act[4]; under § 1132 of ERISA[5]; and, with regard to certain tribal claims.[6]

A review of FIFRA's pre-emption clause and relevant Supreme Court authority resolves the matter. FIFRA's pre-emption clause, 7 U.S.C. § 136v, reads as follows:

(a) **In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

It is apparent from the language of subsection (a) that FIFRA does not wholly oust the states from this area of the law. That conclusion is reinforced by subsection (b), providing:

(b) **Uniformity**

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

The Supreme Court has recognized that such language would be "pure

---

[4] Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

[5] Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987).

[6] Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

6

surplusage if Congress had intended to occupy the entire field of pesticide regulation." *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 612-13, 111 S.Ct. 2476, 2485-86, 115 L.Ed.2d 532 (1991)(holding that FIFRA's comprehensive regulatory scheme is "not so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it")(citations and internal quotation marks omitted); *accord Hurt v. Dow Chemical Co.*, 963 F.2d 1142, 1144-45 (8th Cir. 1992)(Even if Congress intended "to preempt state authority completely in the area of labelling, packaging, and warning.... [it] does not mean that removal was proper. It means only that there may be a good federal pre-emption defense"); *see also Thigpen v. Cheminova*, 1997 WL 827794, *4 (S.D. Miss. 1997)("plaintiffs' lawsuit does not establish a basis for federal removal jurisdiction, notwithstanding [that] pre-emption under FIFRA may well arise with regard to the plaintiffs' claims"); *Murray v. Commonwealth Edison*, 905 F. Supp. 512, 514 (N.D. Ill. 1995)("federal pre-emption of state law claims does not ordinarily turn them into federal claims" in the absence of an express grant of federal question jurisdiction in the statute); *Rodriguez v. Shell Oil Co.*, 818 F. Supp. 1013, 1015 (S.D. Tex. 1993)("it is abundantly clear that in enacting FIFRA, Congress did not intend to so completely pre-empt the field as to allow the removal from state court of FIFRA-pre-empted claims").

Moreover, "even an 'obvious' pre-emption defense does not, in

7

most cases, create removal jurisdiction." *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1548. Under ERISA, however, the Supreme Court determined that "Congress has clearly manifested an intent to make causes of action within the scope of [ERISA's] civil enforcement provisions ... removable to federal court." *Id*. The Court reached that conclusion based on the language of the jurisdictional subsection of ERISA's civil enforcement provisions, set out at 29 U.S.C. § 1132(f), which states: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." *Id*.

FIFRA contains no similar jurisdictional directive. Defendants point to legislative history which arguably demonstrates congressional intent to pre-empt certain state causes of action, but which says nothing about whether those pre-empted claims are <u>removable</u>. Thus, this court finds no evidence that Congress intended to permit removal of all state actions arguably within the scope of FIFRA. *See Rodriguez*, 818 F. Supp. at 1017 ("Outside of the express pre-emption provision, there is simply no legislative history to support the contrary contention [that removal is proper], and, in the Court's view, express pre-emption, without more, is insufficient to support removal").

Accordingly, this court finds that the complete pre-emption doctrine does not apply to this case, and no federal question

8

jurisdiction exists.

## B. Diversity Jurisdiction

Alternatively, defendants assert federal jurisdiction under the diversity statute, which provides that a district court has original jurisdiction over all cases where the action is between citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a) & (a)(1).

### 1. diversity of citizenship

Although the statute does not specify complete diversity of citizenship, it has long been the rule that diversity jurisdiction requires all plaintiffs to be diverse from all defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). It is conceded that Don Smith is not a diverse party. Smith resides in Lawrence County, Alabama, and thus shares Alabama citizenship with plaintiffs. Instead, defendants argue that Smith has been fraudulently joined in order to prevent removal. If this is so, then the court may disregard Smith's citizenship for purposes of determining jurisdiction. *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983).

Where a party alleges fraudulent joinder, that party bears the burden of proving the allegation by clear and convincing evidence. *Coker*, 709 F.2d at 1440; *Yawn v. Southern Railway Co.*, 591 F.2d 312, 316 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61

9

L.Ed.2d 304 (1979).[7] Although the court properly looks to the complaint itself to determine whether there has been fraudulent joinder, the court may resort to additional submissions, such as deposition testimony and affidavits, when making its determination. *Coker*, 709 F.2d at 1440. All allegations and submissions must be viewed in the light most favorable to plaintiffs, the parties who chose the state forum and oppose removal. *Id.* Thus, if there is even a possibility that a state court would find that plaintiffs' complaint states a valid claim against a resident defendant, the federal court must find that the joinder was proper and remand the case to the state court. *Id.* at 1440-1441.

Plaintiffs assert claims for misrepresentation against both defendants. To prove misrepresentation, plaintiffs must show: (1) a misrepresentation of material fact; (2) made willfully to deceive, recklessly, without knowledge, or mistakenly; (3) which was justifiably relied on by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. Alabama Code § 6-5-101 (1993); *Harrington v. Johnson-Rast & Hays Co.*, 577 So. 2d 437 (Ala. 1991). Alabama courts hold that both an agent and principal may be liable for misrepresentations made by the agent. *Guinn v. American Integrity Insurance Co.*, 568 So. 2d 760, 764 (Ala. 1990)("The salesperson and his principal may be liable for damages if he misrepresents material facts in an attempt to induce

---

[7] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

10

the prospective customer to enter into the contract"); *Williams v. Kasal*, 429 So. 2d 1008, 1010 (Ala. 1983) ("it is clear under our prior cases that in some instances an agent may be liable for torts committed in the scope of his employment").

Plaintiffs allege, *inter alia*, that Smith told them the "Ammo" warranty had been extended to cover "Fury."[8] That allegation, standing alone, is sufficient to state a valid claim against Smith for misrepresentation. Smith's alleged representation was not, as defendants argue, an opinion that some event would occur in the future. Instead, it was a present statement of fact describing FMC's then-existing warranty obligations. *See Allstate Insurance Co. v. Hilley*, 595 So. 2d 873, 876 (agent's statement that certain benefits would be paid for a valid claim was not a promise to act in the future; rather, it was a present statement of fact regarding the insurer's obligations). Thus, if true, plaintiffs' allegations of misrepresentation suggest more than a possibility that a state court jury could find that plaintiffs have stated a valid claim against Smith. Accordingly, joinder of Smith was proper, and complete diversity is lacking.

2.  **amount in controversy**

Defendants also bear the burden of proving the requisite amount in controversy. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Where, as here, plaintiffs have

---

[8] The court need not, and does not, address every alleged misrepresentation by Smith for purposes of deciding whether Smith's joinder was fraudulent.

11

made an unspecified demand for damages,[9] "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement." *Tapscott*, 77 F.3d at 1357 (citing *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir. 1993)).

Defendants' showing on this point begins and ends with their notice of removal, which states: "The amount in controversy exceeds the sum of value of $75,000 exclusive of interest and costs." (Defendants' Notice of Removal ¶ 9.) Defendants present no other evidence to demonstrate that, if plaintiffs recover, more likely than not the judgment will exceed the jurisdictional amount.

Defendants having failed to meet their burden of demonstrating that jurisdiction in this court is proper, this case is due to be remanded to the state court from which it came. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **3rd** day of March, 1998.

                                                  /s/ Lynwood Smith
                                            United States District Judge

---

[9] Plaintiffs seek only "compensatory damages for the costs of the products, Fury and Ammo, and for the loss of cotton profits, and punitive damages in an amount to be assessed by a duly empaneled jury, plus the costs of this action." (Complaint at 7-10.)